Paul J. Roshka (009285)
Timothy J. Sabo (021309)
ROSHKA DeWULF & PATTEN, PLC
One Arizona Center
400 E. Van Buren Street, Suite 800
Phoenix, Arizona  85004
Telephone:  602-256-6100
Fax:  602-256-6800
roshka@rdp-law.com
tsabo@rdp-law.com

Mark J. Rosenberg (*pro hac vice* application pending)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Telephone:  212-216-1127
Facsimile:  212-216-8001
mrosenberg@tarterkrinsky.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JOSHUA DAVID MELLBERG, LLC d/b/a J.D. MELLBERG FINANCIAL and JOSHUA DAVID MELLBERG,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED RETIREMENT INCOME SOLUTIONS, LLC and PAUL D. SPURLOCK,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joshua David Mellberg, LLC, doing business as J. D. Mellberg Financial ("J.D. Mellberg Financial") and Joshua David Mellberg (collectively "Plaintiffs")

1  complain of defendants Advanced Retirement Income Solutions, LLC and Paul D.
2  Spurlock (collectively, "Defendants"), as follows:

3                    JURISDICTION AND THE PARTIES

4      1.      This action arises under the Lanham Act, 15 U.S.C. § 1051 et seq.,
5  particularly under 15 U.S.C. § 1125(a) and the common law, and is for unfair competition
6  under federal and state law, violation of a right of publicity and the Defendants' unjust
7  enrichment.  This Court has jurisdiction over the subject matter of these claims pursuant
8  to 28 U.S.C. §§ 1331, 1338 and 1367.

9      2.      Venue properly lies in this Judicial District pursuant to 28 U.S.C. §§
10  1391(b) and (c).  Defendants are transacting and doing business in this judicial district, are
11  committing the acts complained of herein within this judicial district, have otherwise
12  directed their illegal conduct complained of herein to this judicial district and are subject
13  to the jurisdiction of this Court pursuant to Rule 4 of the Federal Rules of Civil Procedure.

14      3.      Plaintiff Joshua David Mellberg, LLC, which does business as J.D.
15  Mellberg Financial, is a limited liability company formed under the laws of the State of
16  Arizona with a place of business at 3067 West Ina Road, Tucson, Arizona.

17      4.      Plaintiff Joshua David Mellberg is an individual who resides in Tucson,
18  Arizona.

19      5.      Upon information and belief, defendant Advanced Retirement Income
20  Solutions, LLC ("ARIS") is a limited liability company formed under the laws of North
21  Carolina with a principal place of business in Raleigh, North Carolina.

22      6.      Defendant Paul D. Spurlock is an individual who, upon information and
23  belief is a resident of North Carolina.  Upon information and belief, Mr. Spurlock is the
24  President and owner of defendant ARIS.  Upon information and belief, Mr. Spurlock is
25  licensed to sell insurance in the State of Arizona (Arizona Department of Insurance
26  License No. 889014).   Upon information and belief, Mr. Spurlock directed and/or
27  approved all of the activities of ARIS complained of herein.

28

J.D. Mellberg Financial and its Business

7.      Joshua David Mellberg, who is known as Josh, is the owner and President of J.D. Mellberg Financial.

8.      Mr. Mellberg is a highly regarded and nationally known financial advisor based in Tucson, Arizona.

9.      Mr. Mellberg is particularly well-known for advocating retirement plans which include annuities as a significant component.  Mr. Mellberg is frequently interviewed on the subject of annuities, including on national outlets such as CNBC and in publications targeted to industry professionals.  Mr. Mellberg is a pioneer and leader in marketing and selling annuities via the Internet.

10.     J.D. Mellberg Financial provides comprehensive financial planning and investment advisory services to both individuals and businesses.

11.     Annuities are among the financial services products that J.D. Mellberg Financial offers to its clients.  Consumers who purchase annuities are typically individuals in retirement or nearing retirement.

12.     J.D. Mellberg Financial advertises and promotes the services which it offers. A significant portion of J.D. Mellberg Financial's advertising and promotional activities in the field of annuities is conducted on the Internet.  Much of this advertising and promotional activity is related to J.D. Mellberg Financial's offering of a type of annuity known as a "hybrid annuity," which, to the best of Plaintiffs' knowledge, is a term coined by Mr. Mellberg.  In addition, Mr. Mellberg frequently writes and speaks on the subject of hybrid annuities.  J.D. Mellberg Financial is one of the nation's largest, if not the largest seller of hybrid annuities.  Upon information and belief, consumers regularly associate hybrid annuities with J.D. Mellberg Financial and Mr. Mellberg.

13.     J.D. Mellberg Financial does business under the name and mark J.D. MELLBERG FINANCIAL, which is the subject of U.S. Trademark Application No.

1    85/674378.   J.D. Mellberg Financial has continuously used its J.D. MELLBERG

2    FINANCIAL mark in commerce since 2004.

3         14.   J.D. Mellberg Financial has expended millions of dollars promoting the

4    services it provides under the J.D. MELLBERG FINANCIAL mark.  Advertisements for

5    the services provided under the J.D. MELLBERG FINANCIAL mark have appeared on

6    the following websites: Facebook, New York Times, The Huffington Post, Google, Yahoo,

7    Bing, and MSNBC amongst others.

8         15.   In addition, J.D. Mellberg Financial promotes the services it provides under

9    the J.D. MELLBERG FINANCIAL mark on its website with the web address of

10   www.jdmellberg.com which prominently features the J.D. MELLBERG FINANCIAL

11   mark (the "J.D. Mellberg Website").  A copy of the home page of the J.D. Mellberg

12   Website is attached hereto as Exhibit 1.

13        16.   Since December 4, 2009, when the J.D. Mellberg Website was introduced,

14   that website has been viewed over 3.6 million times by over 2.5 million unique, *i.e.*,

15   different, viewers.

16        17.   J.D. Mellberg Financial has generated hundreds of millions of dollars of

17   sales of financial services under its J.D. MELLBERG FINANCIAL mark throughout the

18   United States.

19        18.   Upon information and belief, consumers associate the offering of hybrid

20   annuities with Mr. Mellberg and J.D. Mellberg Financial.

21        19.   The financial services offered in connection with the J.D. MELLBERG

22   FINANCIAL mark are widely recognized by the purchasing public throughout the United

23   States to be of the highest quality, which are offered and sold under superior customer

24   service conditions.  As a result thereof, the J.D. MELLBERG FINANCIAL mark and the

25   goodwill associated therewith are of inestimable value to J.D. Mellberg Financial.

26        20.   By virtue of the wide renown acquired by the J.D. MELLBERG

27   FINANCIAL mark coupled with the extensive national advertising and promotion of

28   financial services offered under that mark, the widespread use of the Mellberg Website

1    and the significant amount of sales under that mark, the J.D. MELLBERG
2    FINANCIAL mark has become famous and has developed a secondary meaning and
3    significance in the minds of the trade and the purchasing public, such that financial
4    services offered under or in connection with this trademark are immediately identified by
5    the purchasing public with J.D. Mellberg Financial.

6           21.    J.D. Mellberg Financial also promotes the services it provides on its website
7    with the web address of www.senior annuityalert.com which prominently features the
8    SENIOR ANNUITY ALERT mark (the "SENIOR ANNUITY ALERT Website").

9           22.    The SENIOR ANNUITY ALERT Website provides, among other things,
10   information on annuities, informational streaming videos featuring Mr. Mellberg speaking
11   about annuities, including hybrid annuities information about J.D. Mellberg Financial,
12   contact information for J.D. Mellberg Financial and a means for potential clients of J.D.
13   Mellberg Financial to request that an informational report be delivered to them.  A copy of
14   the home page of the SENIOR ANNUITY ALERT Website is attached hereto as Exhibit
15   2.

16          23.    J.D. Mellberg Financial has expended millions of dollars promoting its
17   SENIOR ANNUITY ALERT Website.

18          24.    J.D. Mellberg Financial's efforts to promote SENIOR ANNUITY ALERT
19   Website have been successful.  Since January 2010, when SENIOR ANNUITY ALERT
20   was introduced, that website has been viewed over 3.6 million times by over 2.6 million
21   unique, *i.e.*, different, viewers.

22          25.    J.D. Mellberg Financial has continuously used the SENIOR ANNUITY
23   ALERT mark in commerce since January 2010.  The information and financial services
24   offered in connection with the SENIOR ANNUITY ALERT mark are widely recognized
25   by the purchasing public throughout the United States to be of the highest quality, which
26   are offered and sold under superior customer service conditions.  As a result thereof, the
27   SENIOR ANNUITY ALERT mark and the goodwill associated therewith are of
28   inestimable value to J.D. Mellberg Financial.

26.     By virtue of the wide renown acquired by the SENIOR ANNUITY ALERT mark coupled with the national distribution,  widespread use of the SENIOR ANNUITY ALERT Website and extensive promotion thereof, the SENIOR ANNUITY ALERT mark has become famous and has developed a secondary meaning and significance in the minds of the trade and the purchasing public, such that financial services and information offered under or in connection with this trademark are immediately identified by the purchasing public with J.D. Mellberg Financial.

The Defendants' Illegal Conduct

27.     Upon information and belief, ARIS is a financial services company which offers, among other things, annuities to persons in retirement and those nearing retirement.

28.     Upon information and belief, ARIS is a direct competitor of J.D. Mellberg with respect to the sales of annuities.

29.     Upon information and belief, defendant Spurlock owns, controls and directs the actions of ARIS including its Internet advertising.

30.     Upon information and belief, defendant ARIS owns and controls the websites with the web addresses of www.hybridannuitiesexposed.com (the "Hybrid Annuities Exposed Website").   In an apparent effort to create and foster consumer confusion, the Hybrid Annuities Exposed Website is completely devoid of any indication that ARIS has a relationship – ownership or otherwise – with Hybrid Annuities Exposed Website.

31.     The Hybrid Annuities Exposed Website is of a relatively low production value and contains statements regarding the alleged incompetence and shoddy sales practices of insurance agents who sell hybrid annuities.  As those statements relate to Mr. Mellberg and J.D. Mellberg Financial, those statements are false.

32.     Commencing at a time presently unknown to Plaintiffs, ARIS, upon information and belief at the direction of defendant Spurlock, without the consent of Mr. Mellberg or J.D. Mellberg Financial, began buying the terms "J.D. Mellberg," "Josh

Mellberg" and "Senior Annuity Alert" as Google AdWords (collectively, the "Accused Keywords"). Google AdWords are generically referred to as keywords.

33. As a result of ARIS's purchases of the Accused Keywords, when person in geographical locations selected by ARIS conducted a Google search for one of the Accused Keywords, a sponsored advertisement containing a link to the Hybrid Annuities Exposed Website and a telephone number for ARIS (although not identified as ARIS's telephone number) appeared on the search results page above the organic search results for Mr. Mellberg, J.D. Mellberg Financial and and/or Senior Annuity Alert and next to prominent text which states "ad related to J.D. mellberg," "ad related to josh mellberg" or "ad related to senior annuity alert" as the case may be. True and correct copies of screenshots for the search results for each of the Accused Keywords are attached hereto as Exhibit 3.

34. Upon information and belief, Internet users who typed one or more of the Accused Keywords into the Google search engine had previously learned about J.D. Mellberg Financial, Mr. Mellberg or Senior Annuity Alert by viewing J.D. Mellberg's advertising, viewing and interview of Mr. Mellberg and/or visiting the J.D. Mellberg Website or the SENIOR ANNUITY ALERT Website and, moreover, knew about the association between J.D. Mellberg Financial, Mr. Mellberg and hybrid annuities. Upon information and belief, many of the Internet users who conducted Google searches using the terms "J.D. Mellberg," "Josh Mellberg" or "SENIOR ANNUITY ALERT" were conducting follow-up research on Mr. Mellberg and/or J.D. Mellberg Financial with the intent of obtaining information as to how to contact J.D. Mellberg Financial in order to arrange an appointment for a consultation. As a result, these Internet users were likely to believe that the Hybrid Annuities Exposed Website was related to or affiliated with J.D. Mellberg Financial or Mr. Mellberg.

35. In the alternative, upon information and belief, Internet users who visited the Hybrid Annuities Exposed Website after conducting Google searches for "J.D. Mellberg," "Josh Mellberg" or "SENIOR ANNUITY ALERT" believed that the

Website's statements referring to the incompetence and shoddy sales practices of insurance agents that sell hybrid annuities referred to Mr. Mellberg and/or J.D. Mellberg Financial.

36.     The Accused Keywords were geo-targeted.  This means that ARIS's sponsored ads only appear on an Internet user's screen when the user: (a) is physically situated in one of the geo-targeted locations (which were selected by ARIS at, upon information and belief, defendant Spurlock's direction); and (b) conducts a Google search for one of the Accused Keywords.  Arizona was one of the locations that ARIS, upon information and belief, at the direction of defendant Spurlock, geo-targeted.

37.     Upon information and belief, ARIS, at the direction of Mr. Spurlock, regularly reviews the SENIOR ANNUITY ALERT Website.

38.     On October 5, 2012, J.D. Mellberg Financial, after expending significant time, effort and money on research and development, revised the content, layout, graphics and colors of the SENIOR ANNUITY ALERT Website.  A true and correct copy of the revised survey page of the SENIOR ANNUITY ALERT Website is attached hereto as Exhibit 4.

39.     Days later, ARIS, upon information and belief at the direction of defendant Spurlock, without J.D. Mellberg Financial's consent, copied the new layout, graphics and colors used on the revised survey page of the Financial's SENIOR ANNUITY ALERT Website and used the copied materials on ARIS's website with a web address of www.advancedannuitysolutions.com (the "Advanced Annuity Solutions Website").  A true and correct copy of a page from the Advanced Annuity Solutions Website showing materials copied from the SENIOR ANNUITY ALERT Website is attached hereto as Exhibit 5.

///

///

///

///

### FIRST CAUSE OF ACTION
UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
ASSERTED BY J.D. MELLBERG FINANCIAL

40.　　J.D. Mellberg Financial repeats and relleages the allegations of Paragraphs 1-39 as if fully set forth herein.

41.　　This claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, particularly under 15 U.S.C. § 1125(a), and alleges the use in commerce of false designations of origin, false descriptions, and false representations.

42.　　Long prior to the acts of Defendants complained of herein, J.D. Mellberg Financial extensively marketed, promoted and used its J.D. MELLBERG FINANCIAL and SENIOR ANNUITY ALERT marks (collectively, the "J.D. Mellberg Financial Marks") on a nationwide basis to identify its services and to distinguish them from those provided by others.  By reason of the distinctiveness of the J.D. Mellberg Financial Marks, these trademarks indicate to customers, potential customers and the trade that financial services offered in connection with the J.D. Mellberg Financial Marks are offered and provided by J.D. Mellberg Financial.

43.　　As a result of J.D. Mellberg Financial's marketing, promotion and substantial sales of financial services under the J.D. Mellberg Financial Marks, the J.D. Mellberg Financial Marks have developed and have a secondary and distinctive meaning to customers, potential customers and the trade so that the goods that are offered in connection with these trademarks are known and understood to originate from J.D. Mellberg.

44.　　Upon information and belief, Defendants have used the J.D. Mellberg and Senior Annuity Alert keywords (collectively, the "Infringing Keywords") with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the reputation of J.D. Mellberg Financial and to improperly appropriate J.D. Mellberg Financial's valuable trademark rights.

45.     Defendants' use of the Infringing Keywords has caused and is likely to cause confusion, mistake or deception in the minds of the trade and purchasing public and create the erroneous impression that Defendants' use of the Infringing Keywords and the services offered in connection with those keywords are authorized, endorsed, sponsored or approved by J.D. Mellberg Financial or, alternatively, that J.D. Mellberg Financial services offered in connection with J.D. Mellberg Financial Marks are provided, authorized, endorsed, sponsored or approved by Defendants.  This likelihood of confusion is compounded by the fact that the Infringing Keywords are used in connection with Defendants' Hybrid Annuities Exposed Website, which website does not provide any indicator of its source.

46.     Defendants' use of the Infringing Keywords constitutes a use in interstate commerce of a false designation of origin and a false and misleading description and representation of services in commerce, with knowledge of the falsity, which has and is likely to cause confusion, mistake and deception and a use in commercial advertising and promotion which misrepresents the nature, characteristics, qualities and origin of the Defendants' services and commercial activities, all within the meaning and in violation of 15 U.S.C. § 1125(a).

47.     Defendants' use of the Infringing Keywords has caused and, unless enjoined, will continue to cause irreparable harm and damage to J.D. Mellberg Financial and its business, reputation and goodwill and has caused J.D. Mellberg Financial to suffer monetary damages in an amount not thus far determined but believed to be at least $5,250,000.

48.     Unless restrained and enjoined, the Defendants' aforesaid acts will cause J.D. Mellberg Financial irreparable harm and damage for which there is no adequate remedy at law.

///

///

///

## SECOND CAUSE OF ACTION
### COMMON LAW UNFAIR COMPETITION
### ASSERTED BY J.D. MELLBERG FINANCIAL

49.     J.D. Mellberg Financial repeats and realleges the allegations contained in Paragraphs 1-48 as if fully set forth herein.

50.     This claim arises under the common law of this State relating to unfair competition.

51.     As more fully set forth above, the J.D. Mellberg Financial Marks have come to have a secondary meaning indicative of origin, relationship, authorization, sponsorship and/or association with J.D. Mellberg Financial.  As a result, the purchasing public and the trade are likely to attribute to J.D. Mellberg Financial the Defendants' use of the Infringing Keywords as a source of origin, authorization and/or sponsorship of Defendants' services, and therefore, to purchase Defendants' services based on that erroneous belief or, alternatively, attribute to Defendants the authorized use of the J.D. Mellberg Financial Marks as a source of origin, authorization and/or sponsorship of J.D. Mellberg Financial's services and therefore, to purchase J.D. Mellberg Financial's services based on that mistaken belief.

52.     Upon information and belief, Defendants intentionally appropriated the J.D. Mellberg Financial Marks and the goodwill associated therewith with the intent of causing confusion, mistake, and deception as to the source of origin, relationship, sponsorship, and/or association of Defendants' services, and with the intent to palm off their services as those of J.D. Mellberg Financial, and, as such, Defendants have unfair competition under the common law.

53.     Defendants' use of the Infringing Keywords has caused and, unless enjoined, will continue to cause irreparable harm and damage to J.D. Mellberg Financial and its business, reputation and goodwill and has caused J.D. Mellberg Financial to suffer monetary damages in an amount not thus far determined.

54.     By reason of such infringement, unfair competition and misappropriation and by Defendants' promotion and offering of services in connection with the Infringing Keywords, Defendants have caused, and unless restrained and enjoined will continue to cause, irreparable injury to J.D. Mellberg Financial's reputation and goodwill and otherwise damage J.D. Mellberg Financial in an amount not thus far determined but believed to be at least $5,250,000.

55.     Defendants' conduct in intentionally misappropriating J.D. Mellberg Financial's goodwill and engaging in unfair competition was intended to wrongfully enrich Defendants and to deliberately and willfully injure J.D. Mellberg Financial in wanton disregard of J.D. Mellberg Financial's rights and Defendants' legal obligations. Plaintiffs are therefore entitled to an award of punitive damages in an amount of no less than $10,500,000.

56.     Unless restrained and enjoined, Defendants' acts of infringement and unfair competition will cause irreparable harm and damage to J.D. Mellberg Financial for which there is no adequate remedy at law.

THIRD CAUSE OF ACTION
IN THE ALTERNATIVE
LIBEL
ASSERTED BY JOSHUA DAVID MELLBERG AND J.D. MELLBERG FINANCIAL

57.     Mr. Mellberg and J.D. Mellberg Financial repeat and reallege the allegations of Paragraphs 1-56 as if fully set forth herein.

58.     Upon information and belief, the Defendants caused Internet users who arrived at the Hybrid Annuities Exposed Website as a result of conducting a Google search for one or more of the Accused Keywords (i.e., "J.D. Mellberg," "Josh Mellberg" and "Senior Annuity Alert" – each of which directly refers to Mr. Mellberg, J.D. Mellberg Financial or both), to believe that the statements on that Website regarding the incompetence and shoddy sales practices of insurance agents which sell hybrid annuities

specifically referred to Mr. Mellberg and/or J.D. Mellberg Financial (individually and collectively, the "Defamatory Statements").

59.     Upon information and belief, the Defendants directly associated the Defamatory Statements to Mr. Mellberg and J.D. Mellberg Financial by: (i) purchasing the Accused Keywords; (ii) associating the Accused Keywords with advertisements linked to the Hybrid Annuities Exposed Website; and (iii) publishing that Website and publishing on that Website the statement, "Have you recently… watched an internet video on the 'Hybrid Annuity' option for your retirement?" on that Website.  Notably, both Mr. Mellberg and J.D. Mellberg Financial are widely associated with the promotion of hybrid annuities through the use of Internet videos.

60.     The Defamatory Statements are false to the extent that they refer to Mr. Mellberg and J.D. Mellberg Financial.

61.     The Defendants knew that the Defamatory Statements are false to the extent that they refer to Mr. Mellberg and J.D. Mellberg Financial and acted intentionally in causing those Statements to be published.

62.     In the alternative, the Defendants were negligent or acted recklessly in failing to determine whether the Defamatory Statements were true before publishing them.

63.     The Defamatory Statements published by Defendants damaged the respective professional and business reputations of Mr. Mellberg and J.D. Mellberg Financial.

64.     The Defamatory Statements published by Defendants caused J.D. Mellberg Financial to lose profits in an amount to be determined at trial but believed to be at least $5,250,000.

65.     The Defamatory Statements published by Defendants caused Mr. Mellberg, as the principal of J.D. Mellberg Financial, to lose income in an amount to be determined at trial but believed to be at least $5,250,000.

66.    The Defendants' conduct in defaming Mr. Mellberg and J.D. Mellberg Financial was intended to wrongfully enrich Defendants and to deliberately and willfully injure Mr. Mellberg and J.D. Mellberg Financial in wanton disregard of Mr. Mellberg's J.D. Mellberg Financial's rights and Defendants' legal obligations. Plaintiffs are therefore entitled to an award of punitive damages in an amount of no less than $10,500,000.

FOURTH CAUSE OF ACTION
VIOLATION OF MR. MELLBERG'S RIGHT OF PUBLICITY
ASSERTED BY JOSHUA DAVID MELLBERG

67.    Joshua David Mellberg repeats and realleges the allegations of Paragraphs 1-66 as if fully set forth herein.

68.    ARIS, upon information and belief, at a time presently unknown, commenced purchasing and using the Google AdWords "J.D. Mellberg" and "Josh Mellberg" (collectively, the "Mellberg Keywords").  Both "Josh Mellberg" and "J.D. Mellberg" identify and refer to Mr. Mellberg.

69.    Defendants purchased the Mellberg Keywords, both of which contain Mr. Mellberg's name, for commercial purposes, namely to publicize and draw potential customers to ARIS and its business.

70.    At no time has Mr. Mellberg consented to Defendants' use of his name, let alone the Mellberg Keywords.

71.    Defendants' use of the Mellberg Keywords has caused and, unless enjoined, will continue to cause irreparable harm and damage to Mr. Mellberg and his reputation and goodwill, and has caused Mr. Mellberg to suffer monetary damages in an amount not thus far determined but believed to be at least $3,000,000.

72.    Defendants' conduct in violating Mr. Mellberg's right of publicity was intended to wrongfully enrich Defendants and to deliberately and willfully injure Mr. Mellberg in wanton disregard of Mr. Mellberg rights and Defendants' legal obligations. Mr. Mellberg is therefore entitled to an award of punitive damages in an amount of no less than $5,000,000.

73.     Unless restrained and enjoined, the Defendants' aforesaid acts will cause Mr. Mellberg irreparable harm and damage for which there is no adequate remedy at law.

FIFTH CAUSE OF ACTION
UNJUST ENRICHMENT
ASSERTED BY J.D. MELLBERG FINANCIAL

74.     J.D. Mellberg Financial repeats and realleges the allegations of Paragraphs 1-73 as if fully set forth herein.

75.     J.D. Mellberg Financial expended hundreds of thousands of dollars developing, researching and testing the content, layout, graphics and colors of the SENIOR ANNUITY ALERT Website, and millions of dollars marketing and promoting its J.D. MELLBERG FINANCIAL and SENIOR ANNUITY ALERT trademarks.

76.     These expenditures have, among other things, made the SENIOR ANNUITY ALERT Website more attractive and attention grabbing to potential purchasers of J.D. Mellberg Financial's services which increases the likelihood that these potential consumers will contact J.D. Mellberg Financial and purchase it services.

77.     In addition, J.D. Mellberg Financial's promotional expenditures relating to its J.D. MELLBERG and SENIOR ANNUITY ALERT marks have caused consumers to recognize these marks and associate them with J.D. Mellberg Financial.

78.     By copying and using, without authorization, portions of the SENIOR ANNUITY ALERT Website and the J.D. MELLBERG and SENIOR ANNUITY ALERT marks, Defendants piggybacked on J.D. Mellberg Financial's efforts and thus were able to avoid the nearly all of the costs development, research, testing and promotional costs incurred by J.D. Mellberg Financial in connection with SENIOR ANNUITY ALERT Website and the J.D. MELLBERG and SENIOR ANNUITY ALERT marks.

79.     Even though Defendants have and continue to use extensively the fruits of J.D. Mellberg Financial's development, research, testing and promotional efforts, and upon information and belief, profit therefrom, Defendants have not compensated J.D. Mellberg Financial for this unauthorized use and have thus been unjustly enriched.

80.     Defendants' unauthorized and uncompensated use of J.D. Mellberg Financial's development, research, testing and promotional efforts is in bad faith and without justification.

81.     J.D. Mellberg Financial has been damaged by Defendants' conduct in an amount to be determined but believed to be at least $4,000,000.

WHEREFORE, Joshua David Mellberg and J.D. Mellberg Financial demand judgment:

(a)     That Defendants, their members, officers, agents, servants, employees, attorneys and all parties in active concert or participation with them be enjoined from:

(i)     Appropriating and using Mr. Mellberg's name for commercial purposes, including, but not limited to, purchasing and using the keywords Josh Mellberg and J.D. Mellberg;

(ii)     Using the Infringing Keywords or any colorable imitation thereof in connection with offering, selling, advertising or promoting the sale of any goods or services or from otherwise using any keywords confusingly similar thereto; infringing the J.D. Mellberg Financial Marks, and unfairly competing with J.D. Mellberg Financial;

(iii)     Using in connection with the sale of any goods or services or the dissemination or distribution of advertising, promotional or marketing materials, a false or misleading description or representation including words or other symbols tending to deceive or cause confusion with J.D. Mellberg Financial or the J.D. Mellberg Financial Marks;

(iv)     Copying the SENIOR ANNUITY ALERT Website or any portion thereof;

(b)     That Defendants be required to:

(i)     Pay Joshua David Mellberg such damages as Mr. Mellberg has sustained as a result as a consequence of Defendants unauthorized use of Mr. Mellberg's name and their defamation of Mr. Mellberg and to account for all gains, profits, and

1 | advantages derived by them from their infringements and unfair competition, including
2 | profits derived directly or indirectly from the used of Mr. Mellberg's name;

3 |         (ii)    Pay J.D. Mellberg Financial such damages as J.D. Mellberg Financial
4 | have sustained as a consequence of their unauthorized use of the J.D. Mellberg Financial
5 | Marks and acts of unfair competition, unjust enrichment and defamation and to account
6 | for all gains, profits, and advantages derived by them from their infringements and unfair
7 | competition, including profits derived directly or indirectly from the used of the Accused
8 | Keywords;

9 |         (iii)    Pay Mr. Mellberg and J.D. Mellberg Financial punitive damages of at
10 | least $10,500,000; and

11 |         (iv)    Pay to Mr. Mellberg and J.D. Mellberg Financial the costs of this
12 | action, including their attorney's fees; and

13 |     (c)    That Mr. Mellberg and J.D. Mellberg Financial have such other and further
14 | relief as the Court may deem just and appropriate.

15 | DEMAND FOR JURY TRIAL

16 |     Joshua David Mellberg and J.D. Mellberg Financial hereby demand a trial by jury.
17 | Dated:  Phoenix, Arizona

18 |
19 |   November 19, 2012
               ROSHKA DeWULF & PATTEN, PLC
20 |

21 |                By____/s/ Timothy J Sabo_____
22 |                     Paul J. Roshka, Jr.
                    Timothy J. Sabo
23 |                     One Arizona Center
24 |                     400 E. Van Buren Street, Suite 800
                    Phoenix, Arizona  85004
25 |                     Telephone:  602-256-6100
                    Fax:  602-256-6800
26 |                     roshka@rdp-law.com
27 |                     tsabo@rdp-law.com
               Attorneys for Plaintiffs
28 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28